**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ERICA CHRISWELL, | ) | |
| | ) | |
| Plaintiff, | ) | No. 11 C 00861 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| BIG SCORE ENTERTAINMENT, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Erica Chriswell brought this *pro se* lawsuit against Defendant Big Score Entertainment, alleging that she is a rap artist and that Big Score infringed upon her trademark, "Eryka Kane," by promoting another rapper, Arika Kane.[1] Big Score now moves to dismiss Chriswell's complaint under 28 U.S.C. § 1915(e)(2)(A), claiming that Chriswell failed to disclose certain assets and income on her *in forma pauperis* petition and thus made an untrue allegation of poverty. R. 76, Def.'s 2d. Mot. Dismiss ¶ 53.[2] For the reasons explained below, Big Score's motion to dismiss [R. 76] is denied.

**I. Background**

Erica Chriswell is a performance artist who has allegedly used the trademarks "Ms. Kane," "Erika Kane," "Eryka Kane," and "Ms. Eryka Kane" since 1999. R. 11, Compl. at 2; R. 49, Pl.'s 1st Resp. Br. ¶ 6. On April 26, 2010, she applied for the trademark "Eryka Kane" with the U.S. Patent and Trademark Office (USPTO). Pl.'s

---

[1]In this federal-question case, this Court has subject matter jurisdiction under 28 U.S.C. § 1331.

[2]Citations to the docket are indicated by "R." followed by the docket entry.

1st Resp. Br. ¶ 8. The USPTO approved the registration, because there were "no conflicting marks," on August 7, 2010. *Id.* But one month after that, the PTO notified Chriswell that Big Score Entertainment had filed a prior pending application to register the mark "Arika Kane." *Id.* In December 2010, Big Score commenced a trademark infringement action against Chriswell in the United States District Court for the District of Connecticut ("Connecticut Action"). R. 44-1, Def.'s 1st Mot. Dismiss at 5.

In February 2011, Chriswell filed a mirror-image lawsuit in this Court against Big Score for allegedly infringing on the same mark in question in the Connecticut Action. R. 1. She also filed an *in forma pauperis* application, requesting that she be permitted to proceed without full payment of fees and that counsel be appointed for her. R. 4, 5. The application required her to disclose, on an affidavit, certain financial information, including any income or property she, or anyone living with her, received or owned. R. 4. Chriswell reported in her financial affidavit that (1) she was unemployed; (2) her father Dejean Chriswell received a monthly pension of $1600; (3) she received $300/month in rental income; (4) she owned real property located at 29040 M140 Highway in Covert, Michigan;[3] and (5) she and her father owned a 2009 Toyota Camry. R. 76-1, Def.'s Exh. 1 (IFP Application).

---

[3]Chriswell initially listed this property's address in her IFP application as 2090 M140 Highway, R. 76-1, Def.'s Exh. 1, which was later corrected as 29040 M140 Highway. R. 76-1, Def.'s Group Exh. B.

Before ruling on Chriswell's petition to proceed *in forma pauperis*, the Court ordered her to file a supplemental financial affidavit explaining whether she received any income from her record sales. R. 8, Apr. 13, 2011 Minute Entry. Chriswell submitted a supplemental affidavit reporting that she had no proceeds from record sales and indeed had $104,784.22 in debt. R. 9, Pl.'s Supp. Aff. Although Chriswell re-listed her father's monthly pension income, the jointly owned 2009 Camry, and ownership of 29040 M140 Highway on the supplemental affidavit, she did not re-report the $300 rental income listed in her original *in forma pauperis* application. *Id.* And, for the first time, she listed ownership of a property at 3834 Walnut Path in Lithonia, Georgia. *Id.*

In light of the additional financial information, the Court granted Chriswell's motion to proceed *in forma pauperis*, waived the $350 filing fee, and allowed her to use the United States Marshals Service to serve summons on Big Score. R. 10, Jan. 30, 2012 Minute Entry. For the time being, however, the Court denied Chriswell's request for recruitment of counsel, finding Chriswell competent to litigate the lawsuit by herself at that stage of the litigation. *Id.*

In July 2012, Big Score moved to dismiss Chriswell's complaint, alleging, among other things, that Chriswell had failed to disclose certain assets in her IFP application. Def.'s 1st Mot. Dismiss at 3-4. The Court denied this first motion (the current motion is the second), finding that the record at that time did not demonstrate that Chriswell had actually lied about her financial status. R. 57, Jan. 28, 2013 Order at 5. But

3

because enough questions had been raised about the financial affidavit's completeness, the Court authorized Big Score to take additional discovery on the issue. *Id.* at 5-6.

Now, Big Score again moves to dismiss Chriswell's complaint, this time alleging that further discovery has revealed that Chriswell failed to disclose real estate properties, corporate assets, vehicles, and income in her original IFP application and supplemental financial affidavit. Def.'s 2d Mot. Dismiss ¶¶ 48-51. Specifically, Big Score contends that Chriswell failed to disclose her ownership interest in the following properties:

- 75361 28th Avenue, Covert, Michigan;
- 75633 C.R. 378, Covert, Michigan;
- 32397 76th Street, Covert, Michigan;
- 831 Washington Street, Bangor, Michigan;
- 33400 Orchard Street, Covert, Michigan; and
- 34800 M140 Highway, Covert, Michigan.

*Id.* ¶¶ 13-18. Big Score also alleges that Chriswell failed to disclose several sources of income, including $285/month in Social Security payments, at least $430/month in benefits from the State of Illinois, and $230/month in unemployment payments. *Id.* ¶¶ 19-22; R. 76-1, Def.'s Exh. 6. Finally, Big Score asserts that Chriswell omitted her ownership interest in a 1999 Chevrolet Tahoe, as well as $15,000 in corporate assets belonging to a company, "Brickgame Entertainment, Inc." Def.'s 2d Mot. Dismiss ¶¶ 23-29. In light of these omissions, Big Score argues that Chriswell's complaint should be dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(A). *Id.* ¶ 31.

## II. Analysis

Litigants who cannot afford the filing fee for a federal case may still file a lawsuit, so long as they submit an affidavit swearing to their inability to pay. *See* 28 U.S.C. § 1915(a)(1). The affidavit serves an important purpose: "The opportunity to proceed *in forma pauperis* is a privilege provided for the benefit of indigent persons and the court system depends upon the honesty and forthrightness of applicants to ensure that the privilege is not abused." *Chung v. Dushane*, 2003 WL 22902561, at *2 (N.D. Ill. Dec. 9, 2003) (citing *Denton v. Hernandez*, 504 U.S. 25, 27 (1992)); *see also Denton*, 504 U.S. at 27 (§ 1915 "protects against abuses of this privilege" by providing for dismissal where allegation of poverty is untrue). Thus, under § 1915(e)(2)(A), "the court *shall* dismiss the case at any time if the court determines that the allegation of poverty is untrue." 28 U.S.C. § 1915(e)(2)(A) (emphasis added). Courts have interpreted this statutory language to require dismissal whenever an allegation of poverty is found to be untrue. *See, e.g.*, *McRoyal v. Commonwealth Edison Co.*, 263 F. App'x 500, 502 (7th Cir. 2008); *Thomas v. Gen. Motors Acceptance Corp.*, 288 F.3d 305, 306 (7th Cir. 2002); *Mathis v. New York Life Ins. Co.*, 133 F.3d 546, 547 (7th Cir. 1998) (per curiam). Thus, if the Court were to find that Chriswell's allegation of poverty is false, it would have "no choice" but to dismiss her complaint; the only question would be whether to dismiss with or without prejudice. *Thomas*, 288 F.3d at 306; *Mullins v. Hallmark Data Sys., LLC*, 511 F. Supp. 2d 928, 930 (N.D. Ill. 2007).

To determine ability to pay, the *in forma pauperis* application asks whether the applicant is incarcerated, employed, or married; whether the applicant or anyone living

in her residence has received more than $200 from any of various sources in the previous twelve months, or if the applicant or a cohabitant has more than $200 in cash or in a bank account, or any stocks, bonds, or securities; whether the applicant or anyone living with the applicant owns any real estate, automobile, boat/trailer/mobile home; and whether the applicant has any dependents. *See* IFP Application.

Here, Chriswell does not dispute that she did not list certain assets on her IFP application and supplemental affidavit, nor does she contend that she did not understand the IFP application. Rather, she offers a bevy of reasons why she believes disclosure was not necessary: (1) the properties located at 75361 28th Avenue and 33400 Orchard Street were supposedly quit-claimed to her in error; (2) the properties located at 75633 C.R. 378 and 32397 76th Street were foreclosed on for nonpayment of taxes, and thus had been forfeited back to the State of Michigan; (3) the property located at 831 Washington Street was condemned and forfeited back to the State of Michigan; (4) the Social Security payments and State of Illinois payments belonged to her father, who is not a party to this suit, and therefore she had no duty to disclose these assets; (5) the unemployment benefits she received were so minimal that they do not affect her indigence; (6) any ownership interest she had in Brickgame Entertainment's corporate assets ceased to exist when the corporation was voluntarily dissolved in late 2010; and (7) the Chevrolet Tahoe was solely owned by her father, Dejean Chriswell, as determined by the Cook County Circuit Court in an adverse claim proceeding. R. 84, Pl.'s 2d Resp. Br. ¶¶ 11-26. In short, Chriswell concedes that certain

information was left off of her IFP application, but asserts that the omissions were immaterial because, despite these assets, she remains impoverished.

Although Chriswell is correct that she is, in fact, indigent (more on this below), it was not her prerogative to decide what is or is not relevant information to disclose on her IFP application. *Moorish Nat. Republic v. City of Chicago*, 2011 WL 1485574, at *4 (N.D. Ill. Apr. 18, 2011). An application to proceed *in forma pauperis* demands complete honesty, *Chung*, 2003 WL 22902561, at *2 (citation omitted), and courts must make an independent assessment of whether a plaintiff should be required to pay the filing fee. *Moorish*, 2011 WL 1485574, at *4. In some instances, the information disclosed by a plaintiff prompts further inquiry from the reviewing court, so Chriswell's attempt to filter information through her own perception of what is and is not relevant might have prevented the Court from assessing an adequate record. By censoring what financial information to present, Chriswell risked thwarting the purpose of the IFP application.

Notwithstanding Chriswell's omissions, however, dismissal is only mandatory under § 1915(e)(2)(A) when a plaintiff's "allegation of poverty is untrue." 28 U.S.C. § 1915(e)(2)(A). Under the statute's text, the trigger for mandatory dismissal is the falsity of the "allegation" of "poverty," not the falsity of any one particular statement on the financial affidavit. Indeed, another subsection of § 1915 refers to the affidavit as including a "statement of all assets," § 1915(a)(1), which suggests that if Congress wanted to require dismissal for any misstatement of any asset, then the more specific terms in § 1915(a)(1) would have been used to say that. So, when a plaintiff misstates

7

assets (or omits them) on her IFP application, and those misstatements (or omissions) do not affect her overall allegation of poverty, dismissal is not mandatory. *See Moorish*, 2011 WL 1485574, at *5. The Seventh Circuit's decisions do not demand otherwise, and have only addressed situations where a plaintiff's omissions turned out to be material to her financial status. *See, e.g.*, *Thomas*, 288 F.3d at 306 (requiring dismissal where plaintiff failed to disclose $58,990 in retirement benefits); *Mathis*, 133 F.3d at 547-48 (requiring dismissal where unemployed plaintiff omitted $14,000 in home equity).[4] Other circuit courts have similarly concluded that immaterial omissions on an IFP application do not require dismissal. *See, e.g.*, *Vann v. Comm'r of N.Y. City Dep't of Corr.*, 496 F. App'x 113, 115 (2d Cir. 2012) (emphasizing that § 1915 serves to weed out litigants who falsely understate their net worth in order to obtain IFP status, but does not require dismissal for inaccuracies, misstatements, or minor misrepresentations made in good faith (citations omitted)); *Lee v. McDonald's Corp.*, 231 F.3d 456, 459 (8th Cir. 2000) (noting that the IFP statute "does not mandate that the district court dismiss [plaintiff's] claim if it finds that certain assertions in his affidavit are untrue;

---

[4]Although the Seventh Circuit has not explicitly drawn a distinction between material and immaterial omissions on an IFP application, some non-precedential decisions suggest that immaterial omissions would not require dismissal. *See, e.g.*, *Holly v. Wexford Health Servs., Inc.*, 339 F. App'x 633, 636 (7th Cir. 2009) (stating that the district court, even after learning that plaintiff may have made false statements in his IFP petition, still had a responsibility to first determine the truth of plaintiff's allegation of poverty before dismissing his case); *Torain v. Ameritech Advanced Data Servs. of Ill., Inc.*, 319 F. App'x 433, 435 (7th Cir. 2009) ("Section 1915(e)(2)(A) requires dismissal if these omissions were *material*." (emphasis added) (citations omitted)).

8

instead, it requires the district court to dismiss the claim if it finds that [he] is not sufficiently poor to qualify for *in forma pauperis* status given the facts that are true").[5]

Here, even when considering her newly revealed assets, Chriswell is still indisputably indigent. All of the additional real properties have been subject to foreclosure or condemned due to nonpayment of taxes, Pl.'s 2d Resp. Br. ¶ 12, and public records suggest that none of these properties have substantial value. And bear in mind that the values do not represent cash-on-hand and are not easily borrowed-against properties. For example, the property located at 75633 C.R. 378 is worth $3000, and the property located at 32397 76th Street is worth only $2100. R. 76-1, Def.'s Exh. 3, Group Exh. B. Moreover, Chriswell's unemployment income of $230 a month, even when combined with her monthly rental income of $300 and her father's various retirement benefits, does not change the fact that she could not afford the then-$350 filing fee. Because what Chriswell left off her application does not render untrue her overall allegation of poverty, dismissal under § 1915(e)(2)(A) is not mandatory.[6]

---

[5]It is worth considering too that if the statute required dismissal of even immaterial misstatements, then chances are many claims would be lost, even if dismissals were made without prejudice. That is because the refiling of a suit dismissed without prejudice may be barred by the statute of limitations, effectively transforming the dismissal into a dismissal with prejudice, *see Cardenas v. City of Chicago*, 646 F.3d 1001, 1008 (7th Cir. 2011). And many *in forma pauperis* applicants would not have the help of a lawyer in fending off a limitations problem in the refiled case.

[6]Big Score cites to *Mullins v. Hallmark Data Sys., LLC*, 511 F. Supp. 2d. 928, 941 (N.D. Ill. 2007), for the proposition that dismissal with prejudice is mandatory if a plaintiff makes *any* untrue statement in her IFP application. Def.'s 2d Mot. Dismiss ¶¶ 34-39. In *Mullins*, the court dismissed the plaintiff's complaint after learning that the plaintiff had omitted almost $20,000 in income and interest on two properties. *Id.* at 930. These omissions rendered her allegation of poverty untrue, and so the statute did require dismissal. *Id.* at 936. Thus, *Mullins* is in line with the general rule that dismissal is required when a plaintiff makes an untrue

Although dismissal is not *required*, the Court still has *discretion* to determine whether dismissal, or some other form of sanction, is appropriate. This is because a "district court has inherent authority to sanction conduct that abuses the judicial process." *Montano v. City of Chicago*, 535 F.3d 558, 563 (7th Cir. 2008) (citations omitted). Here, the IFP form required Chriswell to disclose all her financial assets under penalty of perjury, and her failure to include certain real properties, sources of income, and other assets does warrant some sanction short of dismissal. Although Chriswell's omissions turned out to be immaterial to her financial status, the Court still finds that some form of sanction is appropriate because the following omissions were intentional:

*First*, Chriswell intentionally omitted her ownership interest in real properties located at 75633 C.R. 378, 32397 76th Street, and 831 Washington Street.[7] Chriswell

---

*overall* allegation of poverty, and is distinguishable from the facts here. It is true that *Mullins* did state, in dicta, that "[i]f [plaintiff's] argument is that dismissal with prejudice cannot occur even in cases of intentional misrepresentations on the IFP form, so long as in the end the applicant is actually impoverished, it is an argument that has no support either in the text, the legislative history, or the cases construing § 1915," *id.* at 941, but that was not essential to the court's main holding. And more to the point, that statement in *Mullins* simply restates the principle that a court does have the *discretion* to dismiss a case with prejudice when a plaintiff makes intentional misrepresentations on the application, even if the plaintiff is in fact impoverished. *Id.* at 930.

[7]Big Score also argues that Chriswell increased the value of the property located at 29040 M140 Highway, Covert, Michigan from $2000 in her initial IFP application to $5000 in her supplemental affidavit. Def.'s 2d Mot. Dismiss ¶ 7. The Court does not consider this increase to be an intentional misrepresentation because Chriswell is a *pro se* litigant and not expected to be well-versed in real estate appraisal, and because the increase in reported value actually rendered her application more, not less, accurate.

Similarly, Big Score mentioned in its opening brief that Chriswell failed to disclose a property located at 34800 M140 Highway, Covert, Michigan. *Id.* ¶ 13(h). Because the record does not clearly demonstrate that Chriswell owned this property, and neither party addresses

contends that she did not own the properties located at 75633 C.R. 378 and 32397 76th Street because they had been lost to foreclosure, Pl.'s 2d Resp. Br. ¶ 12-13, but the forfeiture report she herself provided reveals that the foreclosures did not occur until March 1, 2012, more than a year *after* she filed for *in forma pauperis* status. R. 84, Pl.'s Exh. 3. Similarly, Chriswell argues that the property located at 831 Washington Street was condemned and forfeited back to the State of Michigan, Pl.'s 2d Resp. Br. ¶ 13, but the record shows that the foreclosure did not occur until August 2011, six months after Chriswell filed her initial IFP application. R. 76-1, Def.'s Exh. 3, Dougherty Aff. ¶ 4. The untitled, undated foreclosure report submitted by Chriswell does not contradict this fact. *See* R. 84, Pl.'s Exh. 2. Thus, the Court finds that Chriswell owned the properties located at 75633 C.R. 378, 32397 76th Street, and 831 Washington Street at the time she filed her IFP application, and that Chriswell intentionally omitted them from her financial affidavit.

*Second*, Chriswell offers no explanation for why her unemployment benefits were left off her IFP application. Chriswell admits that she began receiving bi-monthly unemployment payments of $115 in 2009. Pl.'s 2d Resp. Br. ¶ 22. Big Score produced evidence showing that Chriswell was still receiving unemployment benefits as of August 2012, which Chriswell does not deny. Def.'s Exh. 6. Because Chriswell does not deny receiving unemployment benefits during this time and only argues that the

---

this property in their briefs, the Court will also disregard this property for purposes of this motion. The properties located at 75361 28th Avenue and 33400 Orchard Street, in Covert, Michigan, which Chriswell claims were quit-claimed to her in error, are likewise disregarded. Pl.'s 2d Resp. Br. ¶ 12.

payment amounts were too insignificant to warrant disclosure, the Court finds that Chriswell intentionally omitted her unemployment benefits.[8]

*Third*, Chriswell intentionally failed to disclose the monthly payments of $285 from Social Security and $430 from the State of Illinois that were being deposited in her father's bank account. Def.'s 2d Mot. Dismiss ¶ 20. Chriswell contends that she had no duty to disclose this income, even though she is named jointly to his checking account, because her father is not a party to this suit and she was only added to the account to help administer his business affairs. Pl.'s 2d Resp. Br. ¶ 21. But the IFP form clearly requires the disclosure of any income over $200 received by the applicant or "*anyone else living at the same residence*," Def.'s 2d Mot. Dismiss Exh. 1 (emphasis in original), and Chriswell demonstrated her understanding of this requirement by listing her father's pension income. Thus, the Court finds that Chriswell intentionally omitted her father's income.[9]

---

[8]Big Score also contends that Chriswell lied about her employment status because she listed herself as a 100% shareholder of Brickgame Entertainment in her 2010 federal tax return. Def.'s 2d Mot. Dismiss ¶ 51. It is true that Chriswell was the business owner of Brickgame Entertainment, which reportedly had $15,000 in depreciable assets in 2010, *id.*, but the Court will not consider either the corporate assets or Chriswell's purported unemployment for purposes of this motion, because the record is inconclusive as to when and under what circumstances Brickgame was dissolved.

Big Score notes that Chriswell failed to report her $300 monthly rental income a second time in her supplemental affidavit, after disclosing it in her original IFP application. *Id.* ¶ 7. Given that Chriswell is a *pro se* litigant, the Court finds this to be an inadvertent mistake, and will not consider it in this motion.

[9]Big Score contends that Chriswell also failed to disclose her ownership interest in a 1999 Chevrolet Tahoe, which she owned jointly with her father. Def.'s 2d Mot. Dismiss ¶¶ 26-31. Chriswell argues that the Cook County Circuit Court determined in an adverse claim proceeding that the Tahoe belonged only to her father. Pl.'s Resp. Br. ¶ 26. Because the record is inconclusive as to who properly owns the vehicle, the Court will disregard this asset for

In light of these intentional omissions, the Court must craft a sanction that is proportionate to the gravity of the offense. *Montano*, 535 F.3d at 563 (citing *Allen v. Chicago Transit Auth.*, 317 F.3d 696, 703 (7th Cir. 2003)). It is true that Chriswell's omissions proved ultimately immaterial to her financial status, but imposing no sanction would condone behavior that intentionally fell short of complete disclosure. The evidence shows that Chriswell failed to disclose certain real properties and sources of income—both to herself and her father—on her IFP application. Chriswell was required to disclose these assets, whether material to her ultimate indigence or not. At the same time, however, Chriswell did not act with bad faith, or with intent to deceive the Court. At worst, she acted carelessly in her financial disclosures, but not in a bad-faith attempt at affecting the indigency finding.[10] Thus, the Court concludes that dismissal with prejudice is too harsh a sanction.

Nor is dismissal *without* prejudice an appropriate sanction. If the Court were to dismiss Chriswell's complaint without prejudice, she may face a statute of limitations bar when she re-files her lawsuit. And, practically speaking, she could still re-file another trademark infringement complaint because Big Score's allegedly infringing conduct is still ongoing, and thus damages would still be accruing. So even if the Court were to dismiss her current complaint, it would only preclude her from recovering any damages she incurred up to the present; Chriswell could still sue for damages she

---

purposes of this motion.

[10]Had Chriswell acted in bad faith—that is, with the intent to deceive the Court—dismissal with prejudice would be warranted. *See Mullins*, 511 F. Supp. 2d at 940.

13

allegedly incurs moving forward. There is yet a third reason why dismissal without prejudice does not make sense: if the Court permitted Chriswell to re-file her complaint, she would again seek to proceed *in forma pauperis* (since she is still indisputably poor), and again enlist the services of the United States Marshals Service to re-serve her complaint, which would amount to a waste of government resources.

In light of these circumstances, dismissal is simply not an appropriate sanction to address Chriswell's conduct. Instead, the Court orders Chriswell to pay a $55 sanction, which is the cost associated with the United States Marshals Service's service of the summons. *See* R. 17, Process Receipt and Return. Payment of the $55 sanction must be made through the Clerk of Court. In light of her indigency, the sanction will be made in 5 installments of $11 by the 15th of each month, starting with August 2013.

## III. Conclusion

For the reasons stated above, Big Score's motion to dismiss [R. 76] is denied, but Chriswell is ordered to pay a sanction of $55 to the Clerk of Court. In the meantime, because the Court finds that Chriswell is, in fact, indigent, and because this case is now progressing to the point of the taking of her deposition, the Court will recruit counsel for Chriswell before discovery goes any further. The status hearing of July 18, 2013 is reset for August 22, 2013, at 11:15 a.m., to give recruited counsel time to learn the case.

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: July 12, 2013